[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF MOTION TO STRIKE
In this case the plaintiff has sued his former employer the defendant Sikorsky in three
 1. He claims he was terminated in whole or in part because he refused to accept substandard helicopter parts violating public policy as expressed in U.S.C. § 2409 et seq., the so-called federal whistle blower statute. First count.
CT Page 3702
 2. He was terminated in whole or in part because of his physical disabilities in violation of federal and state statutes which set forth public policy prohibiting such discrimination. Second count.
 3. He was terminated in whole or in part due to his age thereby violating public policy again set forth in federal and state statutes prohibiting such discrimination. Third count.
The defendant argues that these claims are legally insufficient and must be stricken.
1.
The defendant first argues that the court lacks jurisdiction over counts two and three, respectively, disability discrimination and age discrimination. The defendant alleges that as to the claims in each of these counts there exist adequate statutory remedies under state and federal law which the plaintiff has failed to pursue or exhaust. Thus, whether the plaintiff's claim is framed in tort, Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471
(1980) or contract Magnan v. Anaconda Indus., Inc.,193 Conn. 558 (1984) the plaintiff is not entitled to relief.
As noted by Justice Shea in Magnan v. Anaconda "by the late nineteenth century a vast majority of jurisdictions relying upon a `busy and perhaps careless American treatise writer', had adopted the position that an employment contract of indefinite duration was terminable at will . . . . The rule, fostered in part by the predominant laissez-faire philosophy of the period, reserved to the employer the absolute right to dismiss the employee" 193 Conn. at pp 562-563.
Although this harsh doctrine has been eroded over the years by state and federal statute a new court created limitation on the employer's power has been developed over the years. Connecticut has adopted in Sheets and Magnan the doctrine that an action would lie against the employer where the reason for the discharge involves "impropriety derived from some important violation of public policy,"179 Conn. at page 475. CT Page 3703
The defendant's claim is that the common law causes of action set forth in the second and third counts cannot stand because causes of action based on violations of public policy may only be brought if there in fact is a violation of an important public policy and the person who is a victim of that violation is without remedy. Since this plaintiff has state and federal statutory remedies for the claimed violations, an action may not be based on a common law claim concerning these violations.
The case of Atkins v. Bridgeport Hydraulic Co.,5 Conn. App. 643 (1985) appears to leave the court no discretion in this matter. Despite the plaintiff's attempts to factually distinguish Atkins that court explicitly held
 "The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case that employee was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." 5. Conn. App. at page 648.
The court quoted from and directly relied upon Wehr v. Burroughs Corp., 438 F. Sup. 1052 (USDC, E.D. Pa) (1977). The Wehr court reviewed the development of the Sheets doctrine and explicitly dealt with the issue now before the court.
 "It is clear then that the whole rationale undergirding the public policy exception (to termination at will) is the vindication or the protection of certain strong policies of the community, if these policies or goals are preserved by other remedies, then the public policy is sufficiently served. Therefore, application of the public policy exception requires two factors: (1) that the discharge violates some well-established public policy; and (2) that there be no remedy to protect the interest of the aggrieved employee or society. 483 F. Supp at page 1055 (emphasis added)."
CT Page 3704
Superior court cases and district court cases have fairly consistently held then that neither a .wrongful discharge nor a breach of implied covenant claim are available where as the defendant puts it a plaintiff "has adequate statutory remedies through which the alleged public policy violations can be enforced", (defendant's brief, emphasis added by court). See e.g. Napoleon v. Xerox Corp., 656 F. Sup. 1120, 1125 (D Conn 198), Kelsey v. Sheraton Corp., 662 F. Sup. 10, 14 (D Conn 1986) which cites Arkins for proposition advanced by plaintiff. Also see Santanella v. SNET Co., 10 CLT No. 20 at 11 (Dupont, J.), Glassover v. Audiotronics, Inc., 10 CLT No 20 at 17).
Spagnola v. Macristy Industries Inc. 8 CSCR, 1150
(1993) does appear to disagree with this authority, but Spagnola doesn't even cite Atkins. Also, the anti-retaliation provisions of the Workers' Compensation statute at issue in Spagnola don't provide for administrative remedies, and Magnan v. Anaconda Industries, supra, which the court appears to rely on says nothing about the question of the viability of an independent common law claim in a situation such as the one now before the court.
The defendant's reply brief makes several further arguments which have merit. If an alternative common law remedy were available despite statutory remedies, an aggrieved party could ignore the remedies and procedural requirements of statutes providing for relief against age and disability discrimination and simply bring an action at common law in tort or contract. The party demanding such relief need not bring a complaint to the designated commission charged with preventing such practices and instead of a six-month statute of limitations on a Title VII claim, the employee would have six years under the common law claim.
The court must admit some discomfort with Atkins and Wehr in that they make the unexamined and unexplained assumption that any statutory relief provided to the employee discharged in violation of public policy is ipso facto adequate to enforce that policy. This stifles the traditional power of common law courts to expand and even create remedies in an area otherwise addressed by a CT Page 3705 statutory regulatory scheme, Cf Griswold v. Union Labor Ins. Co., 180 Conn. 507, 518-521 (1982), Restatement of Torts, Second, Section 874A. Why the employer's right to terminate at will is entitled to protection against ordinary development is not clear to the court. What does seem clear, however, is that Atkins requires that the second and third counts of the complaint be dismissed.
2
The defendant has also moved to strike the first count. The plaintiff's job involved inspecting helicopter parts provided by various subcontractors to the defendant. The complaint alleges that on numerous occasions he rejected such parts. The complaint goes on to allege in the first count that the plaintiff's termination was motivated in whole or in part by his actions "in refusing to accept substandard and defective helicopter parts from defense subcontractors violating the public policy set forth in 10 U.S.C. § 2409 et seq." The latter statute, covering federal defense contracts, is the so-called Federal Whistleblower statute. It has been held that this statute does not afford a private cause of action to an employee discharged by a defense contractor, Pacheco v. Raytheon Company, 777 F. Sup. 1089, 1092 (1991). That court noted that retaliatory discharge matters have traditionally been relegated to state law, also see Cummins v. EGG Sealoe Inc., 690 F. Sup. 134, 139 (1988).
The federal statutes in question also are designed to protect people who report "substantial violations of law" to congresspeople, authorized members of the defense department or the department of justice or an appropriate government official where the defense department contract is over $500,000, 10 U.S.C. § 2409, 2409a(a) and (b)(2). From a reading of the complaint it seems that the plaintiff claims protection under the federal whistleblower statute, see paragraph 7 of Revised Complaint, but he does not allege facts to bring himself under the protection of that statute.
The court does not have to address the issues raised by Battista v. United Illuminating Co., 10 Conn. App. 486
(1987) or to question whether or not there could be a state cause of action for a retaliatory discharge because of a CT Page 3706 violation of the federal whistleblower statute or whether firing someone for failure to accept defective helicopter parts is such a violation of public policy so as to provide a common law right of action to the discharged employee. In the latter regard it is apparently left open in our state whether even a "violation of a state statute is invariably a prerequisite to the conclusion that a challenged discharge violates public policy." Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. at page 480, Cf Pierce v. Ortho Pharmaceutical Corp., 399 A.2d 1023 (N.J., 1979).
The problem here is that the plaintiff cites a violation of public policy because the employer attempted to thwart the purposes of a particular federal statute and the complaint doesn't allege the facts to support that allegation. This motion to strike can be granted on the mundane ground that because of this, it is legally insufficient. That is, the complaint does not set forth the factual allegations necessary to bring the plaintiff within the protection of the public policy concerns 10 U.S.C. § 2049 was trying to address. Given that, the court need not go on to discuss the issue of whether assuming there was a violation of that federal statute an action for retaliatory discharge should lee under Sheets or whether being fired for refusal to accept defective helicopter parts raises a Sheets claim even in the absence of statutory proscription of such behavior.
Corradino, J.